517 A.2d 1002

London Grove Township, Appellant *v.* Southeastern Chester County Refuse Authority, Appellee.

Argued September 8, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*John H. Spangler, Parke, Barnes, Spangler & Bortner,* for appellant.

*Roger E. Legg, Roger E. Legg and Associates,* for appellee.

OPINION BY JUDGE DOYLE, November 6, 1986:

London Grove Township (Township) appeals from an order[1] of the Court of Common Pleas of Chester County which denied the Township's application for a preliminary injunction enjoining the Southeastern Chester County Refuse Authority (Authority) from dumping

---

[1] The opinion of Judge THOMAS G. GAVIN, announced from the bench on May 2, 1986, was subsequently actually entered in the docket as a judgment by praecipe of counsel filed on May 6, 1986 in compliance with Pa. R.A.P. 301 regarding appealable orders.

trash on a landfill site within the Township without the conditional use permit required by the Township's zoning ordinances.

The facts in the present controversy are best understood by first examining the status and relationship of the parties. Appellant London Grove Township is a township of the second class located in Chester County, Pennsylvania. Appellee Southeastern Chester County Refuse Authority is a municipal authority formed pursuant to the provisions of the Municipality Authorities Act of 1945 (Act).[2] The Township is one of the municipalities which formed the Authority and is served by it. The Authority's purpose is to provide solid waste disposal to its member municipalities.

The Authority wished to operate a landfill on 80 acres of land it owned in the Township. This tract of land is located entirely within an area zoned R-1 residential. Under Section 400(f)[3] of the Township's zoning ordinances, a municipal authority's sanitary landfill is a permitted use within an R-1 zone, but only if:

(1) it is approved as a conditional use subject to the provisions of Article XIII-A, and (2) its service area shall include London Grove Township, the Township is a member in the event of operation by an Authority, and the operator serves the residents of London Grove Township on an equal basis with its other customers.

In order for a landfill operator to gain conditional use approval, the operator must follow a lengthy and complicated application procedure and must fully comply with the extensive requirements of Section 1355[4] of the Township's zoning ordinance.

---

[2] Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§301-322.

[3] London Grove, Pa., Zoning Ordinances, §400(f) (1985).

[4] London Grove, Pa., Zoning Ordinances, §1355 (1985).

The Authority applied for a conditional use permit for the landfill in August 1984. The Township Zoning Hearing Board, however, did not begin holding hearings on the application until April 14, 1986, after delays which were requested by the Authority. On April 28, 1986, while hearings on the application were continuing, and without advance notice to the Township, the Authority began dumping trash at the landfill site without the required conditional use permit.

The Township, acting pursuant to Section 617 of the Pennsylvania Municipalities Planning Code,[5] sought injunctive relief in the Court of Common Pleas of Chester County to enjoin the Authority from dumping trash without the necessary permits. The Authority defended its actions by stating it was exempt from complying with the Township's zoning ordinances by Section 702 of the Second Class Township Code (Codes),[6] which provides in relevant part that "no ordinance, by-law, rule or regulation shall be adopted [by a second class township] which in any manner restricts, interfers (sic) with, hinders or affects the operation of any other political subdivision or *instrumentality of the Commonwealth*." (Emphasis added.) The trial judge, after a hearing, denied the Township's application for a preliminary injunction on the basis that it had not shown immediate and irreparable harm to itself as a result of the trash dumping. The trial court further stated that it was not absolutely clear that Section 702 necessarily excused the Authority's Action.

The Township then appealed to this Court and requested an injunction pending determination of this case on the merits, pursuant to Pa. R.A.P. 1732. In an

---

[5] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617.

[6] Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65762. Section 702 was added by Section 1 of the Act of August 27, 1963, P.L. 1280.

opinion by Judge CRAIG filed on May 27, 1986, the request was denied on the ground that Section 702 made the legal applicability of the Township's zoning ordinances to the Authority so unclear that no foundation in law existed for the requested injunction.

This case, then, involves the narrow legal issue of whether the Authority is an "instrumentality of the Commonwealth" for the purposes of Section 702. If the Authority *is* an "instrumentality of the Commonwealth" under Section 702, then we must affirm the trial court's denial of the injunction, as the Authority is exempt from complying with the Township's zoning laws.[7] If the Authority *is not* an instrumentality of the Commonwealth, we must reverse the trial court's decision and remand this case to the trial court on the issue of injunctive relief for application of the analysis mandated by our Supreme Court's decision in *Department of General Services v. Ogontz Area Neighbors Association,* 505 Pa. 614, 483 A.2d 448 (1984).

The term "instrumentality of the Commonwealth" is nowhere defined in the Code, the Statutory Construction Act of 1972,[8] or Section 102 of the Judicial Code.[9] Therefore, we must interpret the phrase "instrumentality of the Commonwealth" according to its common and approved usage as required by Section 1903 of the

---

[7] The case law is clear that when a second class township zoning ordinance restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth in the township, such township's zoning ordinance does not apply to those bodies, political subdivisions or instrumentalities. *County of Delaware v. Township of Middletown,* 511 Pa. 66, 511 A.2d 811 (1986); *Middletown Township v. Delaware County Institution District,* 450 Pa. 282, 299 A.2d 599 (1973). *See also Department of Transportation v. DiMascio,* 93 Pa. Commonwealth Ct. 624, 502 A.2d 323 (1985).

[8] 1 Pa. C. S. §§1501-1991.

[9] 42 Pa. C. S. §102.

14

Statutory Construction Act of 1972, 1 Pa. C. S. §1903. The definition of "instrumentality" contained in Webster's Third New International Dictionary is: "1: The quality of being instrumental; 2: something by which an end is achieved; means, b. something that serves as an intermediary or agent through which one or more functions of a controlling force is carried out." "Instrumental" is defined by the same dictionary as "serving as a means or intermediary determining or leading to a particular result; being an instrument that functions in the promotion of some end or purpose."[10]

Municipal authorities have consistently been held by our Supreme Court to be independent agencies *of the Commonwealth* and part of its sovereignty; they are *not* creatures, agents or representatives *of the municipalities* which organize them. *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 348-49, 281 A.2d 882, 884 (1971); *Whitemarsh Township Authority v. Elwert*, 413 Pa. 329, 332, 196 A.2d 843, 845 (1964); *see also Simon Appeal*, 408 Pa. 464, 184 A.2d 695 (1962); *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A.2d 686 (1941); *Tranter v. Allegheny County Authority*, 316 Pa. 65, 173 A. 289 (1934). Municipal authorities, like any other municipal corporation, are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined, by the legislature. They are also subject to change, repeal or total abolition at the will of the legislature. They have no vested interest or rights in their offices, in their charters, in their corporate powers or even in their corporate existence. *Lighton v. Abington Township*, 336 Pa. 345, 352, 9 A.2d 609, 612 (1939). In addition, municipal

---

[10] Webster's Third New International Dictionary, 1172 (1981).

authorities have long been considered agents of the Commonwealth, assisting the state in the administration of civil government. *Simon Appeal,* 408 Pa. 464, 467-70, 184 A.2d 695, 697-98 (1962). Thus, under a long line of precedent, municipal authorities fall within the meaning of the term "instrumentality of the Commonwealth" because they are agents of the state.

The Township also makes the argument that since this Court has held on prior occasions that for purposes of this Court's original jurisdiction, municipal authorities are considered local agencies, rather than Commonwealth agencies, *Scott v. Shapiro,* 19 Pa. Commonwealth Ct. 479, 339 A.2d 597 (1975), *Levine v. Redevelopment Authority of the City of New Castle,* 17 Pa. Commonwealth Ct. 382, 333 A.2d 190 (1975) and *Clearfield Area Housing Corp. v. Hughes,* 13 Pa. Commonwealth Ct. 96, 318 A.2d 754 (1974), they cannot be "instrumentalities of the Commonwealth." We do not agree.

In *Clearfield,* property owners in Lawrence Township, Pennsylvania obtained an injunction from the common pleas court enjoining the Clearfield Housing Corporation from constructing a low-income housing project for the Clearfield Housing Authority near plaintiffs' property. Although the decision of the common pleas court was reversed on other grounds, one of the contentions of the authority on appeal was that the common pleas court lacked jurisdiction to enter the injunction because the authority was an "agency of the Commonwealth" and under Section 401(a)(1) of the Appellate Court Jurisdiction Act (ACJA), Act of July 31, 1970, P.L. 673, *formerly,* 17 P.S. §211.401(a)(1), repealed by Section 2 of the Judicial Act Repealer Act, Act of April 28, 1978 P.L. 202, 42 P.S. §2000(a) [1443], the Commonwealth Court had original jurisdiction over any civil action against the Commonwealth or its

officers. This Court rejected the authority's argument, noting that notwithstanding cases declaring municipal authorities to be agencies of the Commonwealth for some purposes, *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 281 A.2d 882 (1971), the court was required to look to the definition of the word "Commonwealth" in the ACJA (which specifically excluded municipal and other local authorities from its definition) in order to determine this Court's jurisdiction and, therefore, because local or municipal authorities were excluded from the definition of Commonwealth, the Housing Authority was a local governmental body in that case and was deemed to be a local governmental body. *Clearfield*, 13 Pa. Commonwealth Ct. at 104, 318 A.2d at 758. This does not mean, however, that because municipal governmental bodies are for some purposes local agencies they may not be, for other purposes, agents or instrumentalities of the state. In fact, in *Scott*, where we held the Southeastern Pennsylvania Transportation Authority (SEPTA) not to be a state agency for the purposes of the Sunshine Law, we also recognized that SEPTA was statutorily deemed to be an instrumentality of the Commonwealth. *Scott*, 19 Pa. Commonwealth Ct. at 483, 339 A.2d at 599. The Township mistakenly equates case law descriptions of municipal authorities for purposes of asserting immunity with the statutory definitions which govern our appellate jurisdiction in attempting to define the term "instrumentality of the Commonwealth" in the Section Class Township Code. The two were not meant to be, and are not, synonymous. Therefore, although municipal authorities may be local agencies for one purpose, this does not necessarily mean they are not "instrumentalities of the Commonwealth" for the purposes of Section 702 of the Code.

As support for our interpretation of Section 702, we rely somewhat upon the legislative history of this section. The original House version of the bill (HB 533, printer no. 1750) contained the language of the present Section 702.[11] The bill was forwarded to the Senate, which deleted the phrase "political subdivision or instrumentality of the Commonwealth."[12] Instead, the Senate inserted a provision which would have exempted only municipal authorities from the operation of ordinances of second class townships.[13] The House nonconcurred in the amendments,[14] and the Senate subsequently passed the bill as originally proposed by the House. This history serves to indicate that the legislature specifically intended to exempt municipal authorities, *as well as* a wide range of other governmental bodies, from the operation of second class township ordinances, and that the retention of the House language in the final statute was intended to broaden the range of governmental bodies exempt from second class township ordinances and limit the powers of second class townships.

The Township contends that we should define "instrumentality of the Commonwealth" by looking at the Authority's functional relationship with the Commonwealth. The Township primarily relies upon three cases: our Supreme Court's decision in *Specter v. Commonwealth*, 462 Pa. 474, 341 A.2d 481 (1975); the Superior Court's decision in *Greer v. Metropolitan Hospital*, 235 Pa. Superior Ct. 266, 341 A.2d 520 (1975); and this Court's decision in *Kennedy v. Delaware River Joint Toll Bridge Commission*, 23 Pa. Commonwealth Ct. 662, 354 A.2d 52 (1976), to support its position.

---

[11] Legislative Journal-House, 1211-12 (1963).
[12] *Id.* at 2235.
[13] *Id.*
[14] *Id.*

From these cases, the Township in substance extracts three criteria to be used in determining whether a governmental body is an "instrumentality of the Commonwealth." These criteria require consideration of: (1) the political body appointing the officers of the body; (2) the body's financial dependency on the Commonwealth, and (3) the degree of control the Commonwealth exercises over the body's day-to-day operations. Applying these criteria, the Township would have us find that municipal authorities are not "instrumentalities of the Commonwealth" because the member municipalities of the Authority, not the Commonwealth, appoint the Authority's officers and fund its operations and because the Commonwealth's control over the operations of the Authority is only nominal.

We decline to adopt this analysis. The cases relied upon by the Township were all decided between the date of our Supreme Court's abolition of governmental immunity in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), and the abolition of sovereign immunity in 1978 in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). The issue in all of these cases was whether the particular governmental body being sued in each case was an instrumentality of the Commonwealth so as to be cloaked with the Commonwealth's sovereign immunity, or whether these bodies were local government units not immune from suit because of *Ayala*. Since these cases were decided at least 12 years *after* the legislation being construed here, the legislature could not have been mindful of these decisions nor could they have had the Township's proffered construction of the phrase "instrumentality of the Commonwealth" in mind when it used that term in Section 702. *See Greer*, 235 Pa. Superior Ct. at 276, 341 A.2d at 525 (1975). Therefore, the Township's analysis is less than compelling and

not pertinent here. Accordingly, we hold a municipal authority organized under the Act is an "instrumentality of the Commonwealth" for the purposes of Section 702.

The order of the Court of Common Pleas of Chester County is therefore affirmed.

### ORDER

Now, November 6, 1986, the order of the Court of Common Pleas of Chester County, Civil Division, No. 86-02977 dated May 2, 1986, is hereby affirmed.