889 A.2d 1168

**LEHIGH–NORTHAMPTON AIRPORT AUTHORITY, Appellant**

v.

**LEHIGH COUNTY BOARD OF ASSESSMENT APPEALS,**
**County of Lehigh, Hanover Township, Catasauqua**
**Area School District, Appellees (Nine Cases).**

Supreme Court of Pennsylvania.

Argued April 13, 2005.

Decided Dec. 30, 2005.

Charles James Fonzone, Frances Ann Fruhwirth, Allentown, for Lehigh–Northampton Airport Authority, appellant.

Michael J. Witherel, Pittsburgh, for Pa. Mun. Authorities Ass'n, appellant amicus curiae.

Rudolph Zieger, for County of Lehigh, appellee.

J. Jackson Eaton, III, Allentown, for Hanover Tp., appellee.

Thomas F. Traud, Jr., Allentown, for Lehigh County Bd. of Assessment Appeals, appellee.

David Gerald Knerr, for Catasauqua Area School Dist., appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

The question presented in this appeal is whether, and to what extent, real property owned by a municipal authority

formed in accordance with the Municipality Authorities Act is immune from local real estate taxation.

The Lehigh–Northampton Airport Authority (the "Authority") was incorporated in 1968 by Lehigh and Northampton Counties pursuant to the Municipality Authorities Act of 1945.[1] The Authority's board of governors consists of 19 members, ten appointed by Lehigh County, and nine appointed by Northampton County. Neither the Commonwealth of Pennsylvania, nor its officers, officials, or legislature appoints any member of the board of governors. The Authority's mission, as set forth in its articles of incorporation, is "to plan and provide for the current and future air transportation needs of the Lehigh Valley Market Area by constructing, maintaining, and operating safe, efficient, modern and attractive airport facilities." To that end, the Authority owns and operates the Lehigh Valley International Airport (the "Airport"), located within the boundaries of both Hanover Township and the Catasauqua Area School District, both of which are in Lehigh County. In connection with airport operations, the Authority owns and maintains various parcels of real property having a variety of uses, including, *inter alia*, aircraft hangars, public aircraft parking aprons, air cargo processing centers, United States Customs facilities, United States Postal Service facilities, air courier facilities, helicopter training areas, airplane maintenance areas, areas for the storage of runway snow removal equipment, facilities for package sorting

---

1. Act of May 2, 1945, P.L. 382, No. 164, §§ 1–19 (as amended, 53 P.S. §§ 301–322) (the "Municipality Authorities Act"). The act was recodified and replaced by the Act of June 19, 2001, P.L. 287, No. 22, § 1 (as amended, 53 Pa.C.S. §§ 5601–5623). The current statute is substantively the same as the former one with respect to the issues involved in the present case. Relevant here, the act states as follows:

 **§ 5607. Purposes and powers**
 **(a) Scope of projects permitted.**—Every authority incorporated under this chapter shall be a body corporate and politic and shall be for the purposes of financing working capital; acquiring, holding, constructing, financing, improving, maintaining and operating, owning or leasing, either in the capacity of lessor or lessee, projects of the following kind and character and providing financing for insurance reserves: ... (3) ... airports and all facilities necessary or incident thereto.

 53 Pa.C.S. § 5607(a).

and ground operations, areas for the storage of construction materials, areas for the training of firefighters, and a storm water detention basin.

Upon the Authority's filing of applications for tax immunity or exemption in 1999, the Lehigh County Board of Assessment Appeals granted partial relief by granting tax-exempt status to two of the Authority's twenty-one properties. The Authority filed ten appeals to the common pleas court, and the affected taxing bodies—Lehigh County, Hanover Township, and Catasauqua Area School District (collectively with the Board of Assessment Appeals, "Appellees")—intervened. The common pleas court consolidated the appeals for all purposes, including trial.

During the proceedings in the trial court, the Authority sought blanket tax immunity or, alternatively, tax exemption for the ten subject properties.[2] The Authority filed a motion for summary judgment, raising both of these claims. The trial court bifurcated proceedings on the motion, opting first to address whether the Authority enjoyed tax immunity, and leaving for later the question of tax-exempt status as to each individual parcel. On the immunity issue, Appellees maintained that this Court's decision in *Pennsylvania State University v. Derry Township Sch. Dist.*, 557 Pa. 91, 731 A.2d 1272 (1999) (*"Penn State"*), is directly relevant to the present matter. In *Penn State,* this Court held that the Milton S. Hershey Medical Center of the Pennsylvania State University ("PSU") was not immune from real estate taxes because only a minority of the individuals on PSU's governing board were members of, or appointed by, the Commonwealth government. Appellees indicated that, because all of the members of the Authority's governing board are appointed by Lehigh County or Northampton County, the same result should obtain here as in *Penn State.* It further argued that, although authorities

2. Tax immunity precludes a locality from imposing taxes upon the Commonwealth and its agencies. Tax exemption, on the other hand, "carves out specified property from taxation that the taxing body otherwise has the authority to tax." *SEPTA v. Board of Revision of Taxes,* 574 Pa. 707, 713–14, 833 A.2d 710, 713 (2003). This distinction is addressed more fully *infra.*

created pursuant to the Act are considered Commonwealth entities for some purposes, the Authority should nonetheless not be deemed a Commonwealth entity for purposes of property tax immunity.

The Authority countered that *Penn State's* Commonwealth-control test should not be deemed to apply presently, because that case did not involve an entity created under the Municipality Authorities Act, and moreover, in post-*Penn State* disputes, the Commonwealth Court has opted not to utilize that standard outside of the educational-institution setting. *See SEPTA v. Board of Revision of Taxes,* 777 A.2d 1234 (Pa. Cmwlth.2001), *aff'd* 574 Pa. 707, 833 A.2d 710 (2003); *Dauphin County General Auth. v. Dauphin County Bd. of Assessments,* 768 A.2d 895 (Pa.Cmwlth.2000). Finally, the Authority maintained that its status as part of the Commonwealth rather than as a creature of Lehigh County or Northampton County is illustrated by its relationship to the Pennsylvania Department of Transportation's Bureau of Aviation, which licenses the Airport for operation.

By order dated June 6, 2002, the trial court denied the Authority's motion for summary judgment as to tax immunity. In support of its decision, the court filed a memorandum opinion on June 18, 2002, in which it cited to *Penn State* as setting forth the applicable test for determining whether an entity is an agency or instrumentality of the Commonwealth for purposes of real estate tax immunity, quoting that decision as follows:

> With regard to immunity from real estate taxes, we view the pivotal factor to be whether the institution's real property is so thoroughly under the control of the Commonwealth, that, effectively, the institution's property functions as Commonwealth property.... When determining whether an institution is an agency or instrumentality of the government, we must consider whether the Commonwealth has majority control of the board.

Trial Court Op. (June 18, 2002), at 7 (quoting *Penn State,* 557 Pa. at 96, 731 A.2d at 1274). Noting that this Court has never expressly limited the Commonwealth-control standard to edu-

cational institutions only, the trial court construed the above passage broadly to apply to the present case notwithstanding the Authority's status as a Commonwealth entity under the Municipality Authorities Act; in this respect, the court suggested that, to the extent the Commonwealth Court's post-*Penn State* jurisprudence conflicted with the above pronouncement in *Penn State,* the latter must be deemed to control as representing the view of the state's highest appellate court. *See id.* at 9–10.

Subsequently, on July 2, 2002, the case proceeded to trial *de novo* on the issue of tax exemption, at which evidence concerning the uses of the subject properties was adduced. During these proceedings, the status of one of the ten parcels was resolved by agreement of the parties; accordingly, that property is not at issue here. As to the nine remaining properties, the trial court ultimately issued findings of fact and conclusions of law, and memorialized these in a verdict and accompanying opinion dated October 24, 2002.[3] In resolving any factual issues, the trial court indicated that the Authority bore the burden of demonstrating exempt status by a preponderance of the evidence. The court attached, as an appendix to its opinion, a separate opinion written in 1989 by the Honorable Robert K. Young, another judge on the same court, resolving an earlier tax dispute between the same parties. The present trial court expressly adopted and incorporated several findings of fact from Judge Young's opinion. *See* Trial Court Op. (Oct. 24, 2002) at 10–12.

After setting forth its findings, the court granted in part and denied in part the Authority's appeals, applying the statutory exemption contained in the General County Assessment Law.[4] *See* 72 P.S. § 5020–204(a)(7) (exempting public

3. The litigation commenced in 1999 and, as such, presumably only pertained to liability for tax year 2000 initially. Because the trial did not occur until 2002, however, the dispute expanded to cover tax years 2001 and 2002 as well. Accordingly, the relevant tax years are 2000–2002, as reflected in the proofs offered at trial and the trial court's order disposing of the nine consolidated appeals.

4. Act of May 22, 1933, P.L. 853 (as amended, 72 P.S. §§ 5020–101—5020–602).

property used for a public purpose from most forms of local taxation); PA. CONST. art. VIII, § 2(a)(iii) (stating that the General Assembly may exempt from taxation "[t]hat portion of public property which is actually and regularly used for public purposes"). In particular, the trial court noted that an exemption would be granted only where the Authority demonstrated that the property in question was used for a public purpose or was reasonably necessary for the efficient operation of the airport. *See generally Appeal of Allegheny County*, 425 Pa. 578, 581, 229 A.2d 890, 891 (1967); *Appeal of Moon Township*, 387 Pa. 144, 148, 127 A.2d 361, 364 (1956). Applying this standard, the trial court found that hangar space utilized by the Airport's "fixed based operator" was exempt,[5] as was land utilized for such things as storage of airport maintenance materials, fire fighter training, storm water control, and the operations of private couriers such as Airborne Express and Federal Express. Exempt status was denied, however, for hangar and apron space used by private entities that did not serve the citizens of the Lehigh Valley, as well as certain vacant land and land used for the storage of various construction materials. In making these determinations, the court examined such things as the individual uses of office and hangar space by each tenant, as well as whether the aircraft housed in the hangars were utilized specifically to provide air service to the residents of Lehigh Valley. In some instances, the trial court denied exemption solely based upon what it considered insufficient proof on the part of the Authority to establish the public nature of the use in question. *See, e.g.,* Trial Court Op. (Oct. 24, 2002), at 16, 20, 22–25.

On appeal to the Commonwealth Court, the Authority asserted, *inter alia,* that the trial court had erred in denying it immunity from local taxation. In a published decision, the Commonwealth Court affirmed the trial court's denial of tax immunity, relying on *Penn State* and utilizing the same reasoning advanced by the common pleas court. *See Lehigh–*

5. The presence of a fixed-based operator, which requires hangar space to operate, is necessary for airport operations, as it handles refueling and maintenance needs for the entire airport. *See* Trial Court Op. (Oct. 24, 2002) at 11 & n. 15.

*Northampton Airport Auth. v. Lehigh County Bd. of Assessment Appeals*, 843 A.2d 443, 447–48 (Pa.Cmwlth.2004). It additionally affirmed the trial court's decisions regarding the various properties' tax exempt status based on the trial court's factual findings and application of the public purpose test.

■ In requesting further appeal to this Court, the Authority did not challenge the manner in which the Commonwealth Court and trial court determined the tax exempt status of the individual parcels of land. Rather, it confined its request to the legal question of whether municipal authorities formed under the Municipality Authorities Act are Commonwealth instrumentalities for purposes of immunity from local taxation, notwithstanding that their governing board may not be under Commonwealth control. We allowed review to resolve this issue. *See Lehigh–Northampton Airport Auth. v. Lehigh County Bd. of Assessment Appeals*, 580 Pa. 701, 860 A.2d 125 (2004) *(per curiam)*. As this is an issue of law, it is subject to plenary review by this Court. *See United States Steel Corp. (USX Clairton Works) v. Unemployment Comp. Bd. of Review*, 579 Pa. 618, 631, 858 A.2d 91, 99 (2004).

Presently, the Authority argues that the Commonwealth Court erred in failing to recognize that, under established precedent of this Court, it is a Commonwealth agency and, as such, is immune from local real estate taxation to the extent its property is used for official governmental purposes. The Authority contends, in this respect, that the Commonwealth Court misconstrued *Penn State* as applying to all authorities created under the Municipality Authorities Act, whereas that decision was premised upon the specific features presented concerning an institution of higher learning. Amicus Pennsylvania Municipal Authorities Association (the "Association") agrees that *Penn State* is inapplicable because it was initially unclear whether the university could properly be deemed a state entity as it was "plainly non-governmental" in several aspects. *Penn State*, 557 Pa. at 95, 731 A.2d at 1274. The Association urges that, by contrast, there is no question here that the Authority is a governmental agency, as this Court's recent decision in *Southeastern Pa. Transp. Auth. (SEPTA) v.*

*Board of Revision of Taxes,* 574 Pa. 707, 833 A.2d 710 (2003), reaffirmed that all regional authorities are considered Commonwealth entities. The Association notes that *SEPTA* was decided four years after *Penn State,* and faults the Commonwealth Court for failing to either apply or distinguish *SEPTA.*

Appellees respond by asserting that *Penn State* represents a wholesale change to tax-immunity law, and that any prior decision concerning municipal authorities which does not employ the Commonwealth-control standard is no longer valid. *See* Brief for Appellees at 11. They argue that the *SEPTA* decision is distinguishable because SEPTA was organized under a different statute which expressly confers Commonwealth-agency status upon it. *See* 74 Pa.C.S. § 1711(a) (providing that metropolitan transportation authorities "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof"); *SEPTA,* 574 Pa. at 718, 833 A.2d at 716 (concluding that SEPTA's property is presumed to be immune due to the above-quoted language from Section 1711(a)). Appellees note that there is no corresponding provision in the Municipality Authorities Act, and that, moreover, the only portion of the act granting authorities relief from property taxation is phrased in terms of tax exemption, rather than tax immunity. *See* 53 Pa.C.S. § 5620 (formerly 53 P.S. § 318) (relating to exemption from taxation and payments in lieu of taxes).[6]

6. That provision states, *inter alia,* as follows:

§ 5620. **Exemption from taxation and payments in lieu of taxes**
The effectuation of the authorized purposes of authorities created under this chapter shall be for the benefit of the people of this Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions. Since authorities will be performing essential governmental functions in effectuating these purposes, *authorities shall not be required to pay taxes or assessments upon property acquired or used by them for such purposes.* ... The bonds issued by any authority, their transfer and the income from the bonds, including any profits made on their sale, shall be free from taxation within the Commonwealth.
53 Pa.C.S. § 5620 (emphasis added). For purposes of the present controversy, this Section is substantively identical to the one it replaced in the 1945 law.

 Because the power to tax is vested within the General Assembly, real estate is immune from local taxation unless that body has granted taxing authority to political subdivisions. *See Delaware County Solid Waste Auth. v. Berks County Bd. Of Assessment Appeals,* 534 Pa. 81, 85, 626 A.2d 528, 530 (1993). Even where such local taxing power exists, property owned by the Commonwealth and its agencies remains unaffected by—or immune from—such power absent express statutory authorization to the contrary. *See id.;* *SEPTA,* 574 Pa. at 713, 833 A.2d at 713 ("It cannot be presumed that general statutory provisions giving local subdivisions the power to tax local real estate, were meant to include property owned by the Commonwealth. . . ."); *Appeal of Bd. of Sch. Dirs. of Owen J. Roberts Sch. Dist.,* 500 Pa. 465, 457 A.2d 1264 (1983); *see also Commonwealth v. Dauphin County,* 335 Pa. 177, 180–81, 6 A.2d 870, 872 (1939) (explaining that legislation generally does not affect the sovereign's rights unless it clearly intends to do so, and that, particularly in the context of taxation, any other rule could "upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes").

 In contrast to tax immunity, tax exemption does not implicate the authority to tax, but excludes from taxation specified property that would otherwise be taxable. *See Delaware County,* 534 Pa. at 85, 626 A.2d at 530. This difference is significant because exemptions are evaluated according to a principle of strict construction in favor of taxation, *see* 1 Pa.C.S. § 1928(b)(5), whereas doubts are resolved in favor of the taxpayer in assessing the reach of the taxing statute in the first instance. *See BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County,* 565 Pa. 65, 72 n. 5, 771 A.2d 759, 763 n. 5 (2001); *see also SEPTA,* 574 Pa. at 713, 833 A.2d at 713; *Delaware County,* 534 Pa. at 85, 626 A.2d at 531 ("[W]e strictly construe statutes purporting to permit taxation of Commonwealth property, and such a grant may not be found by implication." (citing *Appeal of Harrisburg Sch. Dist.,* 53 Pa.Cmwlth. 299, 417 A.2d 848 (1980), and *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969))). "Thus, the

primary distinction between 'immunity' and 'exemption' is simply that 'the ordinary presumption against exception does not apply where the property involved is owned by the Commonwealth, since such property has for reasons of public policy been consistently recognized as free from taxation.' " *SEPTA*, 574 Pa. at 713–14, 833 A.2d at 713 (quoting *Commonwealth v. Dauphin County*, 335 Pa. at 182, 6 A.2d at 872–73). In short, Commonwealth property is presumed immune, and the local taxing body bears the burden to demonstrate taxability. As explained more fully *infra*, moreover, different analytical principles apply in determining the tax liability associated with specific uses of property depending on whether its owner enjoys property tax immunity as a Commonwealth instrumentality, or whether the property is potentially taxable, but its owner claims an exemption from an otherwise-applicable taxing statute.

Here, Appellees are correct in stating that the Municipality Authorities Act does not expressly confer Commonwealth status upon municipality authorities in the same manner as does SEPTA's enabling legislation; however, their contention that the Authority is therefore not a Commonwealth instrumentality for purposes of tax immunity cannot be harmonized with *In re Application of Mun. Auth. of Upper St. Clair Township (Appeal of Simon)*, 408 Pa. 464, 470, 184 A.2d 695 (1962), which discusses municipal authorities at some length and concludes that their "fundamental nature" is that of "a corporate agency of the state, and not a child of a municipality," or with *Delaware County*, 534 Pa. at 86, 626 A.2d at 531, which holds that entities created pursuant to the Municipality Authorities Act are immune from local property taxes.[7] This

7. *See also Commonwealth v. Erie Metro. Transit Auth.*, 444 Pa. 345, 348, 281 A.2d 882, 884 (1971) (affirming that authorities created under the Municipality Authorities Act are agencies of the Commonwealth for purposes of statutory sales and use tax exemptions); *Whitemarsh Township Auth. v. Elwert*, 413 Pa. 329, 332, 196 A.2d 843, 845 (1964) (indicating that such authorities are state instrumentalities for purposes of assessing the construction cost of a sewer system); *PennDOT v. Wilkinsburg Penn Joint Water Auth.*, 740 A.2d 322, 324 (Pa.Cmwlth. 1999) (finding a water system formed pursuant to the Municipality Authorities Act to be a state instrumentality); *London Grove Township*

may explain why Appellees presently urge that any pre-*Penn State* decision (including *Delaware County*) that did not employ that opinion's Commonwealth-control standard for determining tax immunity is invalid. We do not agree that *Penn State* had such a far-reaching effect.

The holding in *Penn State* was premised upon the idiosyncratic nature of the relationship between PSU and the Commonwealth. The Court related the history of the school, including its creation as the Farmers' High School of Pennsylvania in 1855, *see* 24 P.S. § 2531, and its transition from being funded primarily by the state and federal governments to its present status as receiving funding chiefly from the federal government and private sources. *See Penn State,* 557 Pa. at 94, 731 A.2d at 1273 (quoting *Pennsylvania State Univ. v. County of Centre,* 532 Pa. 142, 149–50, 615 A.2d 303, 306–07 (1992)). The Court also contrasted PSU's status with that of

*v. Southeastern Chester County Refuse Auth.,* 102 Pa.Cmwlth. 9, 14, 517 A.2d 1002, 1004 (Pa.Cmwlth.1986) (finding a refuse authority organized under the Municipality Authorities Act exempt from the township's zoning laws as a Commonwealth instrumentality).

The Commonwealth Court has indicated as follows:

> Municipal authorities, like any other municipal corporation, are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined, by the legislature. They are also subject to change, repeal or total abolition at the will of the legislature. They have no vested interest or rights in their offices, in their charters, in their corporate powers or even in their corporate existence. In addition, municipal authorities have long been considered agents of the Commonwealth, assisting the state in the administration of civil government. Thus, under a long line of precedent, municipal authorities fall within the meaning of the term "instrumentality of the Commonwealth" because they are agents of the state.

*London Grove Township v. Southeastern Chester County Refuse Auth.,* 102 Pa.Cmwlth. 9, 14–15, 517 A.2d 1002, 1004 (1986) (emphasis and citations omitted), *appeal granted,* 515 Pa. 589, 527 A.2d 548 (1987), *appeal dismissed as having been improvidently granted,* 517 Pa. 311, 535 A.2d 1052 (1988). This passage was quoted with approval in *PennDOT v. Wilkinsburg Penn Joint Water Auth.,* 740 A.2d 322, 324–25 (Pa. Cmwlth.1999), in which an *en banc* panel of the Commonwealth Court determined that a water authority created under the Municipality Authorities Act was a Commonwealth agency. *Wilkinsburg Penn,* moreover, was decided after *Penn State,* but was not followed by the Commonwealth Court panel in the present case.

the fourteen universities owned and operated by the Commonwealth as the State System of Higher Education, with the latter being "a public corporation that has been statutorily designated a government instrumentality, 24 P.S. § 20–2002–A(a)," whereas PSU's relationship to the Commonwealth "is far more autonomous." *Penn State*, 557 Pa. at 94, 731 A.2d at 1274. The Court noted further that, although the university exhibits governmental characteristics in certain limited respects, in other aspects it is clearly non-governmental—a dichotomy illustrated, for example, by the inclusion of PSU employees within the state employees' retirement system, but the exclusion of universities records from the scope of public documents under the Right to Know Act. Under these circumstances, this Court ultimately found that the determinative factor regarding tax immunity was "whether the institution's real property is so thoroughly under the control of the Commonwealth, that, effectively, the institution's property functions as Commonwealth property." *Id.* at 96, 731 A.2d at 1274. There is no suggestion, however, that this determination was intended to affect the continuing validity of *Delaware County*, or indeed to nullify decades of precedent affirming that municipal authorities created under the Municipality Authorities Act (a statute that was not at issue in *Penn State*) are state agencies. Therefore, we decline to adopt Appellees' and the Commonwealth Court's broad reading of *Penn State* to this effect.

Appellees' contention that Section 5620 pertains only to exemption from taxation, and not tax immunity, is likewise unavailing, as this argument was specifically rejected in *Delaware County;* there the Court recognized that, although the word "exemption" appeared in the Section's caption, the statute's text—which states that municipality authorities "shall not be required to pay any taxes … upon any property acquired or used by them" for their official purposes (*see supra* note 6)—reflects a legislative intent to "reaffirm the longstanding rule that property owned by a municipal authority" is immune from taxation. *Delaware County*, 534 Pa. at 86–87, 626 A.2d at 531 (citing *SEPTA v. Board for Assessment*

*and Revision of Taxes of Delaware County,* 13 Pa.Cmwlth. 207, 319 A.2d 10 (1974)). *See generally Adelphia House Partnership v. Commonwealth,* 709 A.2d 967, 970 (Pa.Cmwlth. 1998) ("Whether a taxing provision is an 'exemption' to be strictly construed against [the taxpayer] or an 'exclusion' to be construed against the taxing body is not controlled by what it is called, but by its language and the effect of that language."). Accordingly, we find that the Authority enjoys property tax immunity as a Commonwealth entity, and that, pursuant to the reasoning of *Delaware County,* this immunity is codified in Section 5620.

Having determined that the Authority's property is immune from taxation, we must address the scope of that immunity. *See Delaware County,* 534 Pa. at 87, 626 A.2d at 531 ("If an agency acts outside its authorized governmental purposes, then its immunity is not automatic."). On this topic, *Delaware County* and our recent decision in *SEPTA* offer guidance. In *Delaware County,* a solid waste authority created pursuant to the Municipality Authorities Act purchased a landfill consisting of 320 acres and acquired an additional 224 acres of land, for a total of 544 acres. At the time of the appeal, 296 acres were not essential either to the waste disposal area or as part of the minimum required buffer zone around the disposal site. Nevertheless, this Court determined that all 544 acres were immune because the authority had acted within its authorized governmental purposes in acquiring all of the property. As to the excess land that was not essential to the operation of the landfill, the Court observed that such property provided extra buffer space between the landfill and other adjacent properties, and additionally, was unusable for any other purpose under the relevant zoning ordinance. The Court noted that the scope of immunity is not "limited to the absolute minimum of property necessary to operate" the facility, and suggested that a different result would obtain if the authority had leased the excess land to unrelated organizations or otherwise had acquired or used it for some purpose not related to the operation of the facility. *See Delaware County,* 534 Pa. at 88–89, 626 A.2d at 532.

Ten years later, this Court was called upon to review a scope-of-immunity dispute when SEPTA purchased a 20–story office building in Philadelphia, used a portion of the property as its headquarters, and leased other areas of the building to governmental, non-profit, and commercial entities. Philadelphia's taxing authority imposed taxes solely upon the portion of the property used by commercial tenants, an action that was upheld by the Commonwealth Court. On appeal to this Court, SEPTA argued that the entire building should be deemed tax-immune as the statute under which SEPTA was created expressly authorized it to enter into such leases as a means of raising revenue and reducing expenses, thereby benefiting the public as a whole. *See* 74 Pa.C.S. § 1741(a)(24). Resolving this issue, the Court reiterated the distinction between tax exemption and tax immunity, and relied upon *Delaware County* as setting forth the applicable test for determining the scope of SEPTA's immunity relative to the office building: namely, although immunity is not limited to the absolute minimum of property necessary for it to carry out SEPTA's operations, nevertheless such immunity does not extend beyond that portion of the building acquired and used in furtherance of SEPTA's authorized governmental purposes. Although SEPTA was statutorily authorized to act as a commercial landlord, these actions were not sufficiently related to the agency's governmental purpose of operating a metropolitan transportation system. Accordingly, the Court affirmed the Commonwealth Court's determination that the portion of the office building leased to commercial tenants fell outside of SEPTA's tax immunity. *See SEPTA,* 574 Pa. at 720, 833 A.2d at 717.[8]

Several principles emerge from these decisions that pertain to the present matter. First, as discussed above,

**8.** Mr. Justice Nigro disagreed that leasing office space to commercial tenants fell outside of SEPTA's official governmental purposes. As SEPTA was statutorily authorized to undertake such activities, *see* 74 P.S. § 1741, he would have found the entire property immune from taxation. In his view, any further qualifications tending to limit immunity reflected an improper introduction of tax-exemption principles into the immunity context. *See generally SEPTA,* 574 Pa. at 720–23, 833 A.2d at 717–19 (Nigro, J., dissenting).

unlike in the tax-exemption arena, property owned by a Commonwealth governmental agency is presumed immune, and the taxing body bears the burden of proving any limitation of the scope of the agency's immunity relative to an individual parcel of property that it wishes to tax. This is particularly important here, as the trial court decided the immunity question against the Authority as a matter of law, and proceeded to trial only on the exemption issue, assigning the burden of proof to the Authority and construing any potential exemption strictly against the Authority. Indeed, as noted, exemption was ultimately denied in some instances because the Authority failed to forward sufficient evidence to carry its burden, and not upon any affirmative proof that the property was being used for a non-public purpose.

Another precept evident from *Delaware County* and *SEPTA* is that the standard for judging the scope of immunity may be different from that applicable to questions of tax exemption. Because exemptions are statutory in nature, the relevant statute supplies the governing standard. Presently, as noted, the trial court focused upon the "public purpose" test embodied in the General County Assessment Law (see text accompanying supra note 4). On the other hand, under *Delaware County* and *SEPTA*, immunity is assumed unless the agency acts outside of its authorized governmental purposes. This aligns with Section 5620, which affirms that authorities need not pay taxes on property acquired or used for "authorized purposes" relating to the "perform[ance of] essential governmental functions." 53 Pa.C.S. § 5620; *see supra* note 6. Here, in applying the public purpose test for exemption purposes, the trial court relied upon Judge Young's definition from the 1989 litigation, and constrained the concept of public use to those instances where the use directly benefited residents of Lehigh Valley. The court, for example, found that hangar space used by airlines transporting individuals between destinations outside of the valley was non-public and, thus, non-exempt. Regardless of the validity of such a narrow construct for purposes of exemption, under the immunity standard such a use is clearly within the Authority's author-

ized governmental purpose to operate an airport, *see supra* note 1, and is, moreover, qualitatively different from SEPTA's leasing of office space to commercial tenants solely to raise revenue and reduce costs.

As noted, the trial court decided the immunity question as a matter of law without taking any evidence, and then proceeded to trial on the question of tax exemption; during such proceedings, the Authority bore the burden of proof, the standard applied was public use, and the parties structured their presentations and arguments accordingly. Therefore, we find that the appropriate action at this juncture is to remand the matter to the common pleas court for application of the correct legal standard as delineated above. Any parcel—or part thereof—which is ultimately adjudged to be outside of the scope of the Authority's tax immunity will then be subject to local real estate taxes for the tax years in question only if it was deemed non-exempt in the bifurcated trial which has already occurred, for, as noted, the Authority has elected not to challenge those determinations in the present appeal.[9]

The order of the Commonwealth Court is reversed and the matter is remanded to the Court of Common Pleas for further proceedings consistent with this Opinion.

Chief Justice CAPPY, Justices CASTILLE, NIGRO, NEWMAN, EAKIN and BAER join the opinion.

---

9. In this regard we observe that the question of immunity is a threshold issue (as it pertains to the locality's authority to tax in the first instance), and any parcel deemed non-immune may nonetheless be found tax-exempt on a separate legal basis.