731 A.2d 1272 (1999)
The PENNSYLVANIA STATE UNIVERSITY, the Milton S. Hershey Medical Center, Appellee,
v.
DERRY TOWNSHIP SCHOOL DISTRICT and the County of Dauphin, Intervenor, Appellants.
Supreme Court of Pennsylvania.
Argued April 28, 1999.
Decided June 22, 1999.
Kenneth D. Chestek, Erie, for intervenor-appellant, County of Dauphin.
John W. Beatty, Erie, for appellant, Derry Tp. School Dist.
James M. Horne, R. Mark Faulkner, State College, for appellee, Penn State University.
*1273 Carl G. Wass, Harrisburg, for appellee, Dauphin County Bd. of Assessment Appeals.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

OPINION OF THE COURT
FLAHERTY, Chief Justice.
This is an appeal from an order of Commonwealth Court which affirmed a decision of the Court of Common Pleas of Dauphin County holding that the Milton S. Hershey Medical Center (HMC) is immune from real estate tax on the basis that its owner, the Pennsylvania State University (PSU), is an instrumentality of the Commonwealth. Challenging PSU's status as an agent of the Commonwealth, the County of Dauphin and the Derry Township School District, appellants, contest HMC's tax-free status.
PSU is the owner and operator of HMC, which is located in Derry Township, Dauphin County. HMC encompasses PSU's medical school, its dormitories, various related research facilities and two hospitals.
This case arose when taxing authorities of the county and school district notified PSU that, as of January 1, 1993, the property of HMC would be placed on the tax rolls. Real estate tax bills were later issued for the years 1993, 1994, and 1995.[*]
It is well established that real estate owned by the Commonwealth cannot be subjected to taxation by political subdivisions absent express statutory authority. Appeal of Board of School Directors of Owen J. Roberts School District, 500 Pa. 465, 467-68, 457 A.2d 1264, 1265 (1983). The immunity from tax extends to property owned by agencies of the Commonwealth. Id.
In Pennsylvania State University v. County of Centre, 532 Pa. 142, 615 A.2d 303 (1992), we discussed, but did not decide, whether PSU is an agency of the Commonwealth. The issue in that appeal was simply whether the doctrine of issue preclusion prevented the trial court from determining PSU's status as an agent, since, many years before, in 1939, there had been a determination of the same question by a trial court of the same judicial district. Nevertheless, we noted that significant changes have taken place in the university over the past fifty or more years, and that:
To begin with, University students now pay tuition, unlike their counterparts in 1939, and state appropriations have decreased as a percentage of total University revenues, resulting in the fact that the University's principal means of support are no longer state and federal funds but private and federal funds. In addition, the composition of the Board of Directors is no longer publicmuch less governmentalin nature, and therefore, authority to dispose of University property is not within the purview of the Commonwealth. Appellate courts in this Commonwealth have found these and similar factors to be characteristics of a nonprofit corporation chartered for educational purposesnot an agency of the Commonwealth.
The University ... is no longer the same institution that it was in 1939. In view of the wholly changed circumstances and the significant passage of time, the first decision [of the trial court holding that PSU is an agency of the Commonwealth] is marginal at best.
532 Pa. at 149-50, 615 A.2d at 306-07 (footnotes omitted). These factors lead us now to conclude that PSU is not an agency of the Commonwealth.
In contrast to the fourteen universities that are owned and operated by the Commonwealth *1274 as the State System of Higher Education, the latter being a public corporation that has been statutorily designated a government instrumentality, 24 P.S. § 20-2002-A(a), the relationship of PSU to the Commonwealth is far more autonomous.
PSU is a state-related institution of higher education that traces its roots to a legislative enactment that created and designated it, in 1855, the Farmers' High School of Pennsylvania, for the education of youth in science, agriculture, and other fields of learning. 24 P.S. § 2531. The intent was to prepare youths to pursue occupations in farming. 24 P.S. § 2542. In 1862, the institution was renamed the Agricultural College of Pennsylvania. That same year, the federal government, pursuant to the Morrill Land Grant Act, 7 U.S.C. §§ 301-308, made available to each state land to be sold to support at least one college providing instruction in both agriculture and mechanical arts. In 1863, the Commonwealth received property under this act and directed that funds derived therefrom be paid to the Agricultural College of Pennsylvania. The college was renamed the Pennsylvania State College in 1874, and, in 1953, the name was changed to PSU. Ever since 1863, the Commonwealth has made annual appropriations of funds to support the institution. For example, in the fiscal years 1994-1995 and 1995-1996 respectively, appropriations totaled approximately $256.8 million and $275 million. In addition, the Commonwealth has constructed many of the educational facilities at PSU, these being buildings valued in the hundreds of millions of dollars. A further benefit has been provided via an exemption from tax within the Commonwealth for bonds issued by land grant institutions of learning. 24 P.S. § 2575.1. These benefits have allowed PSU to provide lower tuition and fees for students who are residents of Pennsylvania.
The mere funding of an institution does not, however, make it an agency or instrumentality of the state. Mooney v. Temple Univ. Bd. of Trustees, 448 Pa. 424, 429-30, 292 A.2d 395, 398-99 (1972). The Commonwealth funds countless programs and institutions, but few of these are so closely aligned with the government as to be agencies thereof. The difficulty in determining the status of PSU arises from the fact that it is not merely funded by the Commonwealth, but in certain very limited respects it has governmental characteristics, while in other regards it is plainly non-governmental. This dichotomy is illustrated by, for example, the fact that PSU employees are included within the definition of "state employees" under the State Employees' Retirement Code, 71 Pa. C.S. § 5102, but, for purposes of what is commonly referred to as the Right to Know Act, 65 P.S. §§ 66.1-66.4, which provides that public records of state agencies shall be open to examination by citizens of Pennsylvania, PSU has been held not to be a state agency. See Roy v. Pennsylvania State University, 130 Pa.Cmwlth. 468, 568 A.2d 751 (1990). The courts below thoroughly described this as well as other aspects of the divergent manner in which PSU has, for various purposes, been classified as an agency or non-agency of the Commonwealth. Other than to illustrate the dichotomy, however, such an approach is not helpful to the analysis. This is because an entity's status as an agency or instrumentality varies, depending on the issue for which the determination is being made.
With regard to immunity from real estate taxes, we view the pivotal factor to be whether the institution's real property is so thoroughly under the control of the Commonwealth, that, effectively, the institution's property functions as Commonwealth property. PSU's property does not meet this test. The reason lies in the composition of the institution's board of trustees. When determining whether an institution is an agency or instrumentality of the government, we must consider whether the Commonwealth has majority *1275 control of the board. Mooney, 448 Pa. at 431, 292 A.2d at 399.
The board of trustees of PSU is not governmental in nature. It is composed of thirty-two members, only ten of whom are public officials. The latter consist of six members appointed by the governor, and, as ex officio members, the governor, the secretary of education, the secretary of agriculture, and the secretary of environmental resources. Thus, governmental representation on the board constitutes only a minority interest. Majority control rests in the hands of the twenty-two members that include the president of the university, nine members elected by alumni, and twelve members elected by various agricultural and industrial societies. In contrast, universities that are part of the State System of Higher Education, supra, are subject to the system's board of governors, all of whom are governmental appointees, 24 P.S. § 20-2004-A(a), and all members of the council of trustees of each of the institutions are appointed by the governor, 24 P.S. § 20-2008-A (a), (b). Given the composition of the board of trustees of PSU, it is clear that the authority to control and dispose of PSU property is not within the purview of the Commonwealth. See 24 P.S. § 2533 (power to acquire and dispose of real property rests with the PSU board of trustees); PSU Corporate Charter (powers of trustees enumerated under the heading "Incorporation"). It cannot be said, therefore, that the real property of PSU is so controlled by the Commonwealth as to fall within the latter's immunity from local real estate taxation.
The decision of Commonwealth Court to the contrary must, therefore, be reversed. Inasmuch as HMC does not qualify for tax-free status as property owned by an agency of the Commonwealth, a remand to the court of common pleas is necessary for a determination of whether HMC qualifies for exemption on an alternate basis. This is due to the fact that the court of common pleas decided this case on the basis of the immunity claim, leaving unresolved HMC's alternate claim for exemption as an institution of purely public charity under the General County Assessment Law, 72 P.S. § 5020-204(a)(3).
Order reversed, and case remanded.
Justice NIGRO concurs in the result.
NOTES
[*] Due to the tax years in question, this case is not affected by the enactment in 1997 of the Institutions of Purely Public Charity Act, 10 P.S. §§ 371-385, which addresses exemptions from real estate tax for state-related universities.