LEHIGH–NORTHAMPTON AIRPORT AUTHORITY, Appellant

v.

LEHIGH COUNTY BOARD OF AS-SESSMENT APPEALS, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School

District.

Lehigh–Northampton Airport
Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport
Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Lehigh–Northampton Airport
Authority, Appellant,

v.

Lehigh County Board of Assessment Appeals, County of Lehigh, Hanover Township, Catasauqua Area School District.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.
Decided March 1, 2004.

Frances A. Fruhwirth, Allentown, for appellant.

J. Jackson Fruhwirte, Allentown, for appellee, Hanover Township.

Rudolph Zieger, Jr., Allentown, for appellee, County of Lehigh.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Lehigh–Northampton Airport Authority (Airport Authority) appeals from five orders of the Court of Common Pleas of Lehigh County (trial court) which denied the Airport Authority's motion for summary judgment on the issue of immunity; which granted in part and denied in part the Airport Authority's motion for summary judgment regarding the issue of tax exemption; which granted in part and denied in part the Intervenor's motion to determine the sufficiency of answers and objections of the Airport Authority to requests for admissions; which granted in part and denied in part the nine tax appeals of the Airport Authority; and which approved the stipulation of facts in case number 1999–C–2941. We affirm.

The Airport Authority is a municipal authority formed pursuant to the provisions of the Municipalities Authorities Act (Authorities Act).[1] The Airport Authority owns and operates the Lehigh Valley International Airport (LVI).

In 1989, the Airport Authority filed fifteen tax appeals which involved the same parties as this litigation. On October 29, 1999, the Lehigh County Board of Assessment Appeals (Board) issued notices of decision on twenty-one applications filed by the Airport Authority for exemption from real estate taxation, granting relief for tax-exempt status on two of the twenty-one applications. On November 22, 1999, the Airport Authority filed ten separate appeals to the trial court.

---

1. Act of June 19, 2001, P.L. 287, *as amended*, 53 Pa.C.S. § 5601–5622.

The taxing authority, the County of Lehigh, Hanover Township and Catasauqua Area School District (collectively, Intervenors) filed notices of intervention in the appeals. On March 7, 2000, the trial court granted the Airport Authority's unopposed petition for consolidation. The ten real estate tax assessment appeals were consolidated for purposes of trial under No.1999–C–2931. The Airport Authority sought property tax immunity or in the alternative, tax exemption on the ten parcels of land.

On June 1, 2001, the Airport Authority filed a motion for summary judgment. The trial court bifurcated the motion into two separate oral arguments, the first, whether the Airport Authority enjoyed blanket immunity from taxation; and second, whether each individual tax parcel is exempt from taxation.

On March 6, 2002, oral argument was held regarding the issue of blanket immunity. The trial court by order of June 6, 2002, denied the Airport Authority's motion for summary judgment regarding this issue.

On June 12, 2002, the trial court held oral argument regarding the second issue. On July 2, 2002, the trial court denied the Airport Authority's motion for summary judgment on the issue of tax exemption because it found a genuine issue of material fact which rendered summary judgment improper.

On June 12, 2002, argument was also held on the Intervenors' motion to determine the sufficiency of answers and objections of the Airport Authority to request for admissions under Pa. R.C.P. 4014 to which the Airport Authority filed an answer. On July 2, 2002, the trial court granted the Intervenors' motion in part and denied it in part.

On July 2, 2002, after these rulings were rendered, the trial commenced and continued on July 3 and July 9, 2002. The Airport Authority attempted to move into evidence Airport Exhibit No. 7, the Master Agreement, Terms and Conditions of Accepting Airport Improvement Program Grants. The Airport Authority contended that making Airport facilities, the hangars and aircraft parking aprons available in a non-discriminatory fashion, as required, was its service to the public. The Airport Authority cannot turn any pilot away. The facilities at LVI are made available on a first come-first serve basis.

The Intervenors objected to the admission of this evidence on the basis that the issue of public assurances for the receipt of Federal Aviation Administration (FAA) grants was previously decided adversely to the Airport Authority. The Airport Authority argued that the public which LVI is serving is not only individual tenants but aviation commerce in general. The trial court indicated that the issue of service to a broader spectrum of the public was waived during oral argument on the exemption issue.

On that same theory, Mr. Newton, on objection, was prohibited from testifying as to his opinion articulated in his written expert report that the LVI parcels at issue were used for a public purpose. The Airport Authority renewed its position that tax parcels were entirely exempt because they serve the public in terms of the statutory and constitutional requirements. After argument, the trial court ruled that the broader public purpose argument had been waived and sustained the Intervenors' objection.

The trial court permitted Mr. Newton to testify in terms of an offer of proof. The Intervenors offered to stipulate that the use of the paved aprons to the north of the airport were used for a combination of

aircraft run-ups, storage of snow plows, helicopter training, and general aviation overflow parking. Mr. Newton, in an offer of proof, over the continuing objection, testified that these parking aprons were a reasonable and necessary component of LVI for its safe and efficient operation and delivery of services the Airport Authority intends to deliver to the LVI community at large, irrespective of how airplanes are operated on the aprons on any particular day or at any particular point in time.

Finally, the Intervenors offered to stipulate to the use of the air cargo aprons to the south of the main runway, put into service as the phased construction was complete, to the extent the aprons were used for loading and unloading cargo only. Mr. Newton testified as before, that the air cargo facilities are reasonably necessary to the safe, efficient and effective operation of the airport in the delivery of aviation services to the aeronautical public irrespective of whether the parcels may be vacant at some point during a particular year or put to some other use as determined by the Airport Authority.

On October 24, 2002, the trial court granted in part and denied in part the nine tax appeals. On November 21, 2002, the Airport Authority appealed six of the cases not left open for supplementation to our Court. On December 20, 2002, our Court conducted argument on the appealability issue. On December 20, 2002 our Court ordered the six appeals quashed without prejudice for the Airport Authority to file an appeal upon the disposition of the trial court of 99–C–2941.

The Intervenors requested the Airport Authority to supplement the record in case 1999–C–2941, status conferences were held and supplementary material on two of the other tax appeals left open was supplied to the satisfaction of the Intervenors.

On July 2, 2003, a stipulation of fact was approved by the trial court thereby making all nine tax cases appealable to our Court. On July 21, 2003, the Airport Authority filed an appeal to our Court. On July 28, 2003, our Court consolidated the nine appeals.

The Airport Authority contends that the trial court committed an error of law or abuse of discretion in denying the Airport Authority's motion for summary judgment on the issue of immunity; in determining that the Airport Authority, during argument for summary judgment on the issue of tax exemption, waived its contention that the "public purpose" within the contemplation of a constitutional, statutory and case law standard was not limited to providing for the air transportation needs of the Lehigh Valley only but a broader sense of the "public" in terms of intrastate and interstate commerce and using such a waiver as a basis to deny the admission of documentary evidence and expert testimony on the subject at trial and in examining the individual uses of office and hangar space by each individual tenant, the individual uses of each aircraft housed in LVI hangars and the individual points of departure and arrival of charter service passengers, as opposed to the use of the real estate, in deciding the Airport Authority was not entitled to real estate tax exemption of the hangar facilities at LVI.

■ The Airport Authority is not immune from local property taxation. It is well settled that real estate belonging to the Commonwealth or its agencies is not subject to taxation by political subdivisions absent express statutory authority. *Appeal of Board of School Directors of Owen J. Roberts School District*, 500 Pa. 465, 457 A.2d 1264 (1983). Our Pennsylvania Supreme Court has determined that "an entity's status as an agency or instrumentality varies, depending on the issue for which

the determination is being made." *Pennsylvania State University v. Derry Township School District*, 557 Pa. 91, 731 A.2d 1272, 1274 (1999). The Court further stated that:

> With regard to immunity from real estate taxes, we view the pivotal factor to be whether the institution's real property is so thoroughly under the control of the Commonwealth, that, effectively, the institution's property functions as Commonwealth property.

*Id.* Thus, when an entity is considered a Commonwealth agency for one purpose, it does not follow that the entity is considered a Commonwealth agency for property tax immunity purposes. In *Penn State*, our Supreme Court held that the entity was not immune from real estate taxes as only ten of the thirty-two members of its governing board were members of or appointed by the Commonwealth. The Supreme Court found that the authority to control and dispose of Penn State's property was not within the control of the Commonwealth. *Id.*

In the present matter, the authority to control and dispose of the Airport Authority's property rests with its Board of Governors. All of the members of this Board are appointed by either Lehigh County or Northampton County. None are appointed by the Commonwealth. Thus, the Airport Authority is not controlled by the Commonwealth and is therefore, not immune from local real estate taxation as a Commonwealth agency.

■ Next, the Airport Authority waived any analysis or position contrary to that taken by Judge Young in his opinion in the earlier tax assessment appeal between the parties. The Airport Authority was questioned by the Court at the summary judgement argument on June 12, 2002 as follows:

> THE COURT: ... are you, in each instance, saying that Judge Young was correct in relying on his analysis or are there positions that you are taking on some of the issues different from how Judge Young came out?

> MS FRUHWIRTH: No. We argue Judge Young's findings, his positions, to these particular facts and believe Judge Young's criteria the way he broke them down, and made his rulings, were the right ones, and that apply to these particular parcels what would be exempt under his ruling.

Notes of Testimony, June 12, 2002, at 55. The Court did give the Airport Authority the opportunity to articulate a contrary position to Judge Young's, but the Airport Authority did not. Thus, the Airport Authority is bound to the analysis and position taken by Judge Young in his decision in the earlier tax assessment appeal between the parties. The trial court was correct in excluding as irrelevant the Airport Authority's Exhibit No. 7 concerning the assurances given by the Airport Authority to the FAA to make the airport available for public use without unjust discrimination.[2]

The decision of Judge Young also supported the proposition that an air charter service must provide charter service through the Lehigh Valley International Airport in order to serve the air transportation needs of the Lehigh Valley market

---

2. Judge Young dispensed with this issue as follows:

> The fact that the Airport gave Assurances to the Federal Aviation Administration that it would operate a 'public' airport does not establish that the A B E Airport, in whole or in part, is serving the public so as to confer tax exempt status on the land owned by the Authority.

Opinion of Judge Young, at 4.

area and receive an exemption.[3] The Airport Authority argues that an operation which uses a super-luxury custom 747 jet to fly New York sports teams and other persons from departure locations other than LVI to destinations other than LVI, merely storing the aircraft at LVI when not in use, would be tax exempt under Judge Young's analysis. Judge Young's decision is to the contrary. A charter service must serve the citizens of the Lehigh Valley. The Airport Authority accepted this position and analysis and waived any contrary argument.

■ Finally, the trial court properly determined the tax exempt status of the Airport Authority's property. Tax exemption singles out a specific property from taxation that would otherwise be taxable. Article VIII, Section 2 of the Pennsylvania Constitution provides that the General Assembly may by law exempt from taxation certain classes of property, including "that portion of public property which is actually and regularly used for public purposes." PA. CONST. Art. VIII, § 2(a)(iii). Thus, the property is assumed to be subject to tax unless it is specifically excluded and the taxpayer has established the tax exemption.

■ The burden of establishing exemption from taxation is on the taxpayer. *Lehigh Valley Cooperative Farmers v. Bureau of Employment Security*, 498 Pa. 521, 447 A.2d 948 (1982). Our Pennsylvania Supreme Court has determined that when considering if airport property is being used for a public purpose, the use must be "reasonably necessary for the efficient operation of the Airport, even though not indispensable or essential thereto...." *Moon Township Appeal*, 387 Pa. 144, 127 A.2d 361, 364 (1956)(*Moon I*).

■ The trial court was correct in examining the individual uses of office and hangar space by each individual tenant and the individual uses of each aircraft housed in the airport hangars. *Moon I*, *H.K. Porter Company Appeal*, 421 Pa. 438, 219 A.2d 653 (Pa.1966), *Wesleyville Borough v. Erie County Board of Assessment Appeals*, 676 A.2d 298 (Pa.Cmwlth.1996), *Pier 30 Associates v. School District of Philadelphia*, 89 Pa.Cmwlth. 505, 493 A.2d 126 (1985). The trial court was also correct in examining the individual points of departure and arrival of charter service passengers, as it is necessary in determining whether the charter companies are providing air transportation services in and out of LVI for the citizens of the Lehigh Val-

3. Judge Young determined that a charter company which flies in and out of LVI provides the same basic service as a regularly scheduled airline which flies in and out of the airport:

> However, Cole Aviation is a charter flight company licensed by the Federal Aviation Administration (FAA). It does not have regularly scheduled flights out of ABE as does U.S. Air or United Airlines, but is for hire by any member of the public who needs to fly somewhere and for whatever reason chooses not to use the commercial carriers. Cole Aviation provides the same basic service as U.S. Air or United or any of the other airlines that fly in and out of ABE. Just as an airport needs to have regularly

scheduled commercial flights to function effectively, a charter service is also a necessity for its effective functioning as a public instrumentality....

...

5 Thus, even though ABE could function without a charter service, Cole Aviation performs a function that allows the Airport to provide the citizens of the Lehigh Valley with a useful, air transportation service. And, the public instrument for providing air transportation services in the Lehigh Valley is the ABE Airport.

Opinion of Judge Young at 19–20 (Footnote in original). Judge Young determined that planes not used for the general public are not tax exempt. Opinion of Judge Young at 12.

ley and to meet the air transportation needs of the Lehigh Valley market area.

Accordingly, we affirm.

## ORDER

AND NOW, this 1st day of March, 2004, the five orders of the Court of Common Pleas of Lehigh County in the above captioned matter are affirmed.